Honorable Ricardo M. Urbina

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR VANMOOR,<br><br>                              Plaintiff,<br><br>    v.<br><br>ALEXA INTERNET, INC.,<br><br>                              Defendant. | No. CV 06-00051 RMU<br><br>ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF DEFENDANT ALEXA INTERNET, INC. |

Defendant Alexa Internet, Inc. ("Alexa Internet") answers Plaintiff Arthur Vanmoor's complaint, and admits, denies, and alleges as follows:

## I.    ANSWER

1.    The assertions contained in Paragraph 1 are a characterization of Plaintiff Vanmoor's lawsuit and do not require a response.  To the extent that this paragraph alleges any facts regarding Plaintiff Vanmoor's lawsuit, they are denied.

2.    Alexa Internet admits that Plaintiff Vanmoor is a citizen of the Netherlands and that Alexa Internet is a California corporation with its principal place of business in San Francisco, California.  The remaining allegations in paragraph 2 are conclusions of law that do not require an answer, and on that basis are denied.  To the extent that paragraph 2 contains any other factual allegations, they are denied.

3.    The allegations in Paragraph 3 are conclusions of law that contain no factual allegations that require an answer, and on that basis are denied.  To the extent that paragraph 3 contains any factual allegations, they are denied.

    4.    Alexa Internet admits the allegations in Paragraph 4.

    5.    Alexa Internet denies the allegations contained in Paragraph 5.

    6.    Alexa Internet admits that it operates a website on the World Wide Web that can be found at http://www.alexa.com.

    7.    Alexa Internet admits that its website contains information from the publicly available WHOIS database, which Vanmoor's Internet domain registrar maintained, and Alexa Internet admits that the WHOIS information identified Vanmoor as the contact person for the domain names cancercure.org and cancercontrol.info. Alexa Internet lacks sufficient knowledge and information to form a belief as to the truth of the other allegations in Paragraph 7, and on that basis denies them.

    8.    Alexa Internet lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 8, and on that basis denies them.

    9.    Alexa Internet lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 9, and on that basis denies them.

    10.    Alexa Internet realleges its admissions, denials, and allegations in paragraphs 1 through 9 above, which are incorporated herein by reference.

    11.    Alexa Internet denies the allegations contained in Paragraph 11.

    12.    Alexa Internet admits that the information listed on its website is available at http://www.alexa.com. Alexa Internet denies the remaining allegations in paragraph 12.

    13.    Alexa Internet denies that the information on its website was false and denies that Plaintiff Vanmoor suffered any injury. Alexa Internet lacks sufficient knowledge and information to form a belief as to the truth of the other allegations in Paragraph 13, and on that basis denies them. Plaintiff Vanmoor's claims for relief, which follow his First Claim for Damages, do not require any admission or denial. To the extent a response is required, Alexa Internet denies that any relief is warranted.

14. Alexa Internet realleges its admissions, denials, and allegations in paragraphs 1 through 13 above, which are incorporated herein by reference.

15. Alexa Internet admits that its website contains information from the publicly available WHOIS database, which Vanmoor's Internet domain registrar maintained, and Alexa Internet admits that the WHOIS information identified Vanmoor as the contact person for the domain names cancercure.org and cancercontrol.info. Alexa Internet denies all remaining allegations contained in Paragraph 15.

16. Alexa Internet denies the allegations contained in Paragraph 16.

17. Alexa Internet denies the allegations contained in Paragraph 17. Plaintiff Vanmoor's claims for relief, which follow his Second Claim for Damages, do not require any admission or denial. To the extent a response is required, Alexa Internet denies that any relief is warranted.

## II.   AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses, without assuming the burden of proof as to any of them, which burden it expressly disclaims:

1. <u>Improper Venue.</u>  Plaintiff Vanmoor has brought this action in an improper venue. Plaintiff is a resident of the Netherlands and defendant is a resident of California.

2. <u>Failure to State a Claim.</u>  Plaintiff Vanmoor fails to state a claim upon which relief can be granted, including without limitation failure to allege that the purportedly defamatory statements are not substantially true, that they were made with the requisite degree of fault, and that they caused compensable damages.

3. <u>Immunity Under the Communications Decency Act.</u>  Plaintiff Vanmoor's claims are barred by section 230 of the Communications Decency Act, 47 U.S.C. § 230.

4. <u>Failure to Mitigate Damages.</u>  Plaintiff Vanmoor has failed to mitigate his damages, if any.

5. <u>Failure to Plead with Particularity.</u>  Plaintiff Vanmoor has failed to plead his alleged causes of action with the requisite particularity, including without limitation failure to plead that the purportedly defamatory statements are not substantially true, that they were made with the requisite degree of fault, and that they caused compensable damages.

6. <u>Privileges.</u>  Plaintiff Vanmoor's claims are barred by one or more privileges accorded defendants under the common law, under applicable statutes, and under the United States and California Constitutions.

7. <u>Judicial Estoppel.</u>  Plaintiff Vanmoor's claims are barred by the doctrine of judicial estoppel.

8. <u>Unclean Hands.</u>  Plaintiff Vanmoor's claims are barred by the doctrine of unclean hands.

9. <u>Unconstitutional Prior Restraint</u>.  The relief requested by Plaintiff Vanmoor—an injunction barring Alexa Internet from publishing purportedly false statements about him—is a prior restraint prohibited by the U.S. and California constitutions.

### III.    COUNTERCLAIMS

1. Plaintiff Vanmoor's action is frivolous and designed to divert attention from Vanmoor's illegal conduct.

2. According to published media accounts, Plaintiff Vanmoor, who is known as "Big Pimpin' Pappy," pled no contest to criminal charges arising from his alleged leadership of one of the largest prostitution rings in the Southeast United States.  In October 2004, immigration officials deported Vanmoor to the Netherlands.

3. In addition to his prostitution-related activities, Vanmoor publicly and repeatedly has been associated with Internet websites that promote products that purport to be cancer cures approved by the Federal Food and Drug Administration ("FDA").  The U.S. District Court for the Southern District of Florida has called the drugs promoted on those

websites "useless amino acids that [Vanmoor] is hawking at outrageous prices to desperate people." *United States v. Flu Fighter Corp. et al.*, No. 05-61940 (Jan. 10, 2006) (Hearing Transcript attached).

4. Vanmoor's link to the websites at issue in this case is undeniable. From at least April 2000 to October 2005, Vanmoor was listed as the registrant of the website cancercure.org in the public WHOIS database maintained by the Internet registrar for that domain. Alexa Internet is informed and believes that Plaintiff Vanmoor also was listed in the public WHOIS database as the registrant of the Internet domain name cancercontrol.info.

5. On December 28, 2005, Vanmoor was sued by the FDA in U.S. District Court for the Southern District of Florida ("Florida District Court" or "Court") for falsely claiming that the drugs sold at his cancer cure websites were FDA approved. In reality, the FDA has not approved those drugs.

6. On December 22, 2005, the Florida District Court granted temporary injunctive relief requiring Vanmoor to cease immediately the production, shipment and/or sale of the drugs offered for sale on cancercure.org, among other websites. The Court additionally ordered Vanmoor to cease all promotion and advertisement related to these drugs, specifically ordering that Vanmoor immediately shut down the website cancercure.org, among others.

7. Mr. Vanmoor did not comply with the orders. On January 4, 2006, the FDA filed a motion to compel compliance with the Court's temporary restraining order. On January 6, 2006, the Florida District Court ordered that additional websites be shut down immediately. The Court further ordered the government to monitor the websites and inform the Court of any further violations of its order.

8. On January 9, 2006, the FDA filed a second motion to compel compliance on the grounds that the websites ordered to be shut down by the Court were still operational. On

January 10, 2006, the Florida District Court held a hearing on that motion. Counsel representing Mr. Vanmoor appeared at that hearing. With respect to Mr. Vanmoor's refusal to take down the "Cancer-Cure" websites—including cancercure.org—the Court said:

> I find what [Vanmoor] has done to be contemptible, egregious and absolutely outrageous. I just can't imagine why he thinks he's going to be able to do this with total impu[]nity. And I guess it's because he believes that he is over there in the Netherlands . . . .

Transcript at 6:3-8. Counsel for Vanmoor admitted that Mr. Vanmoor:

> [K]nows[] full well there is an order that all of his Web sites that were mentioned in the order . . . are supposed to be shut down.

*Id.* at 6:15-17. Counsel for Vanmoor further admitted that Vanmoor was in contempt of the Court order requiring him to cease the operation of the cancer cure websites, which include cancercure.org. Counsel for Vanmoor suggested, however, that Mr. Vanmoor was working with FDA experts in an attempt to comply with FDA rules regarding the marketing of his cancer cures. *Id.* at 7:1-8. The Court rejected that proposed compliance as impossible and too late:

> First of all, I don't see how he can possibly be in compliance. Second, compliance is not the issue. The issue is whether or not he has complied with the order to shut down these Web sites. . . .
>
> There is only one option: Shut down. And Mr. Vanmoor has failed or refused to do that. [J]ust because he's over there in the Netherlands he thinks he can operate with impunity[.] I presume that there is a criminal investigation proceeding and if there is not, I'm certainly going to recommend the opening of a criminal investigation. And I know that we have a treaty with the Netherlands, and if he thinks that they're going to harbor him because he happens to be a citizen or a national of the Netherlands, he has another thing coming.
>
> He is going to be in this court one way or another. And my only hope for him is that if he is ultimately convicted and if he goes to jail and if he gets sick while he's in jail, that he be required to take one of his own remedies. . . .

*Id.* at 7-8.

9. The Florida District Court requested the United States to prepare a draft order requiring Vanmoor to shut down the websites at issue in this case:

> I want a specific provision in the order that requires the server to shut down these Web sites and also requires the telephone companies to disconnect these phones.

*Id.* at 11:13-16. Counsel for Vanmoor continued to attempt to find loopholes that would allow the continued operation of the sites if they were viewed only outside the United States, but the Court quickly rejected that proposal:

> [Counsel for Vanmoor]: Judge, would the nature of the order be the Web sites as viewed within the United States.
>
> THE COURT: Everywhere. Not only this planet, Jupiter and its nine moons.

*Id.* at 11:20-23.

10. The day after Vanmoor's counsel admitted that Vanmoor was responsible for the cancercure.org Internet domain name and associated website and was using experts to change the manner in which products were marketed on that site, Vanmoor filed this action, alleging that Alexa Internet defamed him linking him to those same websites.

11. In fact, <u>on the day Vanmoor's action was filed</u>, the Florida District Court issued an order again requiring Vanmoor to cease immediately operating the websites cancercure.org and cancercontrol.info, among others. The order further recommended the imposition of sanctions in the amount of $25,000 per day until Vanmoor complied with the temporary restraining order.

12. Alexa is informed, and on that basis believes, that Vanmoor is attempting to use this Court's process for improper purposes, including to harass Alexa Internet for the purpose of preventing it from providing evidence to the United States against Vanmoor and to distract attention from the civil action filed by the United States and the criminal contempt indictment against Mr. Vanmoor issued on January 10.

13. Vanmoor's claims have no basis in law, and they lack any evidentiary support.

14. On February 1, 2006, and again on February 8, 2006, Alexa Internet notified Vanmoor and his counsel of the baseless nature and impropriety of Vanmoor's claims, and requested that he dismiss his action. Vanmoor and his counsel refused to do so.

### First Counterclaim – Abuse of Process

15. Alexa Internet realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 14 above.

16. Vanmoor brought this action against Alexa Internet for the ulterior reason of intimidating Alexa Internet to prevent it from providing information regarding Vanmoor to the United States in regard to the pending civil action by the United States against Vanmoor. Vanmoor also brought this action in an effort to distract attention from his own illegal acts with regard to the operation of the websites cancercure.org and cancercontrol.info, among others.

17. By bringing this action against Alexa Internet, Vanmoor has misused the Court's process for a purpose other than the purpose for which this process was designed.

18. Alexa Internet is entitled to damages, attorney's fees and costs incurred as a result of being forced to defend this meritless action.

### PRAYER FOR RELIEF

WHEREFORE, Alexa Internet respectfully requests that this Court enter judgment against Arthur Vanmoor granting the following relief:

A. Dismissing Plaintiff Vanmoor's Complaint with prejudice;

B. Entering judgment in favor of Alexa Internet on all counts alleged in Plaintiff Vanmoor's Complaint;

C. Entering judgment denying all relief requested by Plaintiff Vanmoor in the Complaint;

D. Awarding Alexa Internet all attorney's fees and costs incurred in defending this action and in prosecuting its counterclaims pursuant to Federal Rule of Civil Procedure 11, as supported by a motion; and

E. Such other and further relief as this Court deems just and proper.

DATED this 23rd day of February, 2006.

PRESTON GATES ELLIS & ROUVELAS MEEDS LLP

By      /S/ BRIAN K. MCCALMON

Brian K. McCalmon, DC Bar #461196
1735 New York Ave. NW, Suite 500
Washington, DC  20006-5221
Phone:  (202) 628-1700
Fax:  (202) 331-1024
E-mail:  brianm@prestongates.com

Philip M. Guess
Theodore J. Angelis
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Phone:  (206) 623-7580
Fax:  (206) 623-7022

Attorneys for Defendant Alexa Internet

## DECLARATION OF ECF FILING AND SERVICE

I declare, under penalty of perjury, under the laws of the District of Columbia, that on February 23, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Montgomery Blair Sibley
> Law Office of Rodriguez & Sibley
> 1717 K. Street, N.W., Suite 600
> Washington, DC 20036-5345
> Phone: 202-508-3699
> Fax: 202-478-0371
> Email: MBSibley@earthlink.net
> Attorneys for Plaintiff Arthur Vanmoor

Signed this 23rd day of February, 2006.

              /S/ Rachael L. Cotner

```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                       FORT LAUDERDALE DIVISION
3              CASE NO. 05-61940-CIVIL-LENARD/KLEIN
4     _____
                                         |
5     UNITED STATES OF AMERICA,          |    MIAMI, FLORIDA
                                         |
6                Plaintiff,              |    January 10, 2006
                                         |
7     v.                                 |
                                         |
8     FLU FIGHTER CORP, et al.           |
                                         |
9                Defendants.             |
      _____X
10
11      TRANSCRIPT OF HEARING RE MOTION TO COMPEL COMPLIANCE
              BEFORE THE HONORABLE THEODORE KLEIN,
12               UNITED STATES MAGISTRATE JUDGE
13
      APPEARANCES:
14
      FOR THE GOVERNMENT:     ROBERT N. NICHOLSON, ESQ.
15                            Assistant U. S. Attorney
                              500 East Broward Blvd., Suite 700
16                            Fort Lauderdale, FL 33301
                              954/660-5707
17
      FOR THE DEFENDANTS:     SIDNEY Z. FLEISCHMAN, ESQ.
18                            800 East Broward Blvd., Suite 300
                              Fort Lauderdale, FL 33301
19                            954/523-7223
20    REPORTED BY:            LARRY HERR, RPR-CM-FCRR-AE
                              Official Federal Court Reporter
21                            301 North Miami Avenue, Room 340
                              Miami, FL  33128 - 305/523-5598
22
23
24
25
```

2

1  DEPUTY CLERK: United States of America vs. Flu
2 Fighter, et al., Case No. 05-61940-Civil-Lenard.
3       Counsel, would you please state your appearances
4 for the record?
5       MR. NICHOLSON: Good afternoon, Your Honor.
6 Robert Nicholson on behalf of the United States. With me
7 at counsel table is Special Agent Kim Ward with the Food
8 and Drug Administration.
9       THE COURT: We are here on plaintiff's second
10 emergency motion to compel compliance with the temporary
11 restraining order and for issuance of a further order to
12 show cause why defendant should not be held further in
13 contempt.
14      Are you ready to proceed, Mr. Nicholson?
15      MR. NICHOLSON: I am, Your Honor.
16      THE COURT: All right.
17      MR. NICHOLSON: It's my understanding --
18 Mr. Fleischman and I talked briefly. He is willing to let
19 me just proffer the exhibits to the Court in lieu of
20 putting on live testimony; is that correct, Mr. Fleischman?
21      MR. FLEISCHMAN: Yes, Judge.
22      THE COURT: All right.
23      MR. NICHOLSON: Your Honor, I provided an exhibit
24 list to the Court and I would proffer the following
25 exhibits: Government's Exhibit No. 16 are Web printouts of

3

1 the subject Web sites made by Agent Ward on January 6, '06,
2 after the 5:00 o'clock p.m. deadline set by the Court;
3       Exhibit No. 17 -- actually for the record,
4 Government Exhibit No. 16 includes a printout from WWW dot
5 Cancer-Cure dot U.S., Cancer-Cure dot U.S., WWW dot Flu
6 Cure dot org, and WWW dot Migraine cure dot com.
7       Government Exhibit No. 17 are Web site printouts
8 from January 7th, '06, made by Agent Ward for WWW dot
9 Cancer-Cure dot U.S. and Cancer-Cure dot U.S., both of
10 which were operating on that date;
11      Exhibit 18 are Web site printouts from January
12 8th, '06, for the following operational Web sites printed
13 out by Kim Ward: WWW dot Cancer-Cure dot U.S., Cancer-Cure
14 dot U.S.; WWW dot Martin Weinstock, spelled
15 M-a-r-t-i-n W-e-i-n-s-t-o-c-k dot com, which has links to
16 the Cancer-Cure Web site;
17      WWW dot Cancer Control dot Info, which redirects
18 to the Cancer-Cure dot U.S. Web site, and WWW dot Tumor
19 Cure dot com, which also redirects to the Cancer-Cure dot
20 U.S. Web site;
21      Government Exhibit No. 19 which contains Web site
22 printouts from January 9th, '06, printed out by Agent Ward
23 at the following operational Web sites: WWW dot
24 Cancer-Cure dot U.S., Cancer-Cure dot U.S., WWW dot Martin
25 Weinstock dot com, WWW dot Cancer-Cure dot org, and WWW dot

4

1 Tumor Cure dot com;
2       Government Exhibit No. 20 are Web site printouts
3 from January 10th, '06, printed out by Agent Ward of the
4 following operational Web sites -- it is the exact same
5 ones from January 9th.
6       And, lastly, Your Honor, Government Exhibit No.
7 21 is a telephone log created by an FDA agent of telephone
8 calls to the following four telephone numbers on January
9 6th after 5:00 p.m. through January 8th, '06.
10      Calls to 800-344-5044, to 561-393-8877,
11 561-392-5363 and 800-709-9096. These were the four
12 telephone numbers that were the subject of the Court's
13 directive.
14      The log shows that the first three numbers were
15 all still operational on each of the dates and that a
16 person answered on each of the attempts at a call. The
17 only number that is no longer operational is 800-709-9096.
18      And I provided copies of all these to
19 Mr. Fleischman.
20      THE COURT: All right.
21      Anything further from the Government?
22      MR. NICHOLSON: Not evidentiary, Your Honor, no.
23      THE COURT: Mr. Fleischman.
24      MR. FLEISCHMAN: Judge, I don't have any
25 evidentiary. Just argument.

5

1       THE COURT: I can't imagine what kind of possible
2 argument that you could make.
3       Why don't you come up to the lectern?
4       MR. FLEISCHMAN: It would be, I suppose, comment
5 rather than argument.
6       THE COURT: I don't know what it is, but can you
7 tell me why these Web sites and these phone numbers have
8 not been shut down?
9       MR. FLEISCHMAN: Judge, what I did was obviously
10 when I left court on Friday, I advised the company and my
11 client that all the Web sites have to be down as well as
12 the phone lines by 5:00 p.m.. I didn't check, necessarily
13 check over the weekend, and I have not personally called
14 the phone lines. But from what I know, the phone lines are
15 up, but there's no orders being taken, there's no orders
16 being shipped, there's no product that's being shipped.
17      THE COURT: It doesn't matter.
18      MR. FLEISCHMAN: Judge, I know that. I
19 understand that. I'm just explaining to you.
20      THE COURT: As a matter of fact, I notice, and I
21 don't know if -- I'm sure Ms. Ward or Mr. Nicholson have
22 noticed, that after the order was entered by me on Friday
23 Mr. Vanmoor made changes to those Web sites. Not only did
24 he not shut them down, he changed some language in them. I
25 find this remarkable.

6

1 At the very least it shows certainly that he has
2 notice of what this Court had said, and I don't think that
3 you dispute that he has notice. But I find his -- I find
4 what he has done to be contemptible, egregious and
5 absolutely outrageous. I just can't imagine why he thinks
6 he's going to be able to do this with total impugnity. And
7 I guess it's because he believes that he is over there in
8 the Netherlands and is uncomfortable.
9     MR. FLEISCHMAN: May I respond?
10    THE COURT: All right.
11    MR. FLEISCHMAN: And I understand, as I told
12 Mr. Nicholson, and I understand their position and I
13 certainly understand the Court's position, but let me just
14 make mention, though, of some of the other Web sites.
15    Again, knowing full well there is an order that
16 all of his Web sites that were mentioned in the order so
17 say with the product are supposed to be shut down. Unless
18 I'm doing something wrong when I went on the Internet, the
19 only ones that I have been able to access, and it appears
20 that the Flu-related sites and the Migraine-related sites
21 are a part of the product --
22    THE COURT: Those have been shut down.
23    MR. FLEISCHMAN: Those are shut down.
24    THE COURT: Because he doesn't make as much money
25 from those as he does from the Cancer-Cure sites.

7

1     MR. FLEISCHMAN: It appears that the Cancer ones
2 are up. Certainly, when you use the word impugnity, I
3 mean, obviously, you know, the Web site is still up and
4 running. But there is an effort being made that started
5 this week to get Mr. Vanmoor using experts. And I'm not an
6 FDA expert. There's consultants that were in the process
7 of getting him in compliance, not only with the Web site
8 but with this product.
9     THE COURT: It's too late for compliance. First
10 of all, I don't see how he can possibly be in compliance.
11 Second, compliance is not the issue. The issue is whether
12 or not he has complied with the order to shut down these
13 Web sites. And changing the language is not one of the
14 options.
15    There is only one option: Shut down. And
16 Mr. Vanmoor has failed or refused to do that. And I
17 started to say, just because he's over there in the
18 Netherlands and he thinks that he can operate with
19 impunity, I presume that there is a criminal investigation
20 proceeding and if there is not, I'm certainly going to
21 recommend the opening of a criminal investigation. And I
22 know that we have a treaty with the Netherlands, and if he
23 thinks that they're going to harbor him because he happens
24 to be a citizen or a national of the Netherlands, he has
25 another think coming.

8

1     He is going to be in this court one way or
2 another. And my only hope for him is that if he is
3 ultimately convicted and if he goes to jail and if he gets
4 sick while he's in jail, that he be required to take one of
5 his own remedies. Beyond that, I can't say anything more
6 about this.
7     MR. FLEISCHMAN: Judge, I mean, I understand.
8 But as far as his compliance, that's what's been in the
9 past, but he is trying to make a good faith effort.
10    THE COURT: To do what?
11    MR. FLEISCHMAN: Using the proper people, to be
12 able to sell and market this product.
13    THE COURT: But that's not an option. That's not
14 an option. The only option is to shut down. And changing
15 the language to now say instead of curing cancer, that this
16 controls cancer with these useless amino acids that he is
17 hawking at an outrageous price to desperate people is
18 simply not sufficient to overcome what he has done and what
19 he has failed to do, which is to shut down.
20    And I don't know where we go from here. I am
21 going to again order compliance, and I am going to again
22 recommend a contempt. And, ultimately -- I'm a firm
23 believer that the wheels of justice grind exceedingly slow
24 but exceedingly fine. And Mr. Vanmoor will be here in
25 court one of these days and he'll have to answer for this.

9

1     Now, beyond that, you tell me, Mr. Fleischman.
2     MR. FLEISCHMAN: Judge, again I stand before you.
3 I don't know what more to say. I mean, I carry out the
4 orders.
5     THE COURT: I'm sorry I don't have him before me
6 instead of you to take the brunt of all of this. But you
7 are his lawyer.
8     MR. FLEISCHMAN: I have carried out the orders of
9 the Court. I have made the advisements that I am required
10 to do. I still haven't gotten the order from last week in
11 regards to the punishment. I have an indictment today,
12 though.
13    THE COURT: He has been indicted?
14    MR. FLEISCHMAN: On the criminal contempt.
15    THE COURT: Mr. Nicholson, that's an indictment?
16 Do you have an indictment?
17    MR. NICHOLSON: It was just handed down this
18 afternoon.
19    THE COURT: On criminal contempt?
20    MR. NICHOLSON: Yes, Your Honor.
21    THE COURT: I don't know that that's
22 extraditable. Is it?
23    MR. NICHOLSON: I don't know.
24    THE COURT: I would tend to doubt it, but I'm not
25 sure. I don't know what the treaty itself provides as far

10

1 as extradition. Usually you need something more than just
2 a criminal contempt.
3      MR. NICHOLSON: That's being handled by another
4 AUSA in my office.
5      THE COURT: Who is handling that?
6      MR. NICHOLSON: AUSA Robin Rosenbaum.
7      THE COURT: Let me ask you this: I want these
8 Web sites shut down. Is there a way to locate the server?
9 Do we know where the server is?
10     MR. NICHOLSON: It is our understanding based on
11 the who is information from the Web site that it's been
12 operated by a company in Luxembourg. That has not been
13 confirmed at this point. We are exploring with the Office
14 of International Affairs whether or not an order from this
15 Court would be effective as to shutting them down and the
16 phone numbers. I think the domestic phone companies.
17     But, quite frankly, we could find ourselves quite
18 quickly chasing our tail chasing different phone numbers
19 and different Web servers. We are exploring that option.
20     THE COURT: Is there a way to easily locate the
21 providers for the telephone numbers?
22     MR. NICHOLSON: It would be fairly easy to do
23 from the All Writs Act, and I will explore that.
24     THE COURT: I am through entering orders and
25 recommendations that he shut down. Obviously, he has no

11

1 intention of complying. So I want to do what's necessary
2 to take steps to shut down the Web site. And I understand
3 the difficulty of that. But the phone numbers, I think we
4 can do.
5      What I would like you to do is, if you would,
6 please, you e-mailed me a draft R&R. I believe that on the
7 contempt I can only do an R&R. But as far as the motion to
8 compel, I have the authority to compel.
9      So I would like you to recast that in terms of an
10 order by me compelling, and a Report and Recommendation.
11 And I want to include these latest events of what has
12 occurred in the last two days, including today's findings.
13     Now, in addition, I want a specific provision in
14 the order that requires the server to shut down these Web
15 sites and also requires the telephone companies to
16 disconnect these phones. I don't know what we can do about
17 the Web sites. But the phones, I would think that by
18 service of this order on the phone companies, that they
19 would be willing to shut down those phone numbers.
20     MR. FLEISCHMAN: Judge, would the nature of the
21 order be the Web sites as viewed within the United States?
22     THE COURT: Everywhere. Not only this planet,
23 Jupiter and its nine moons.
24     Now, what's your recommendation in terms of a
25 daily fine? It's just going to be a recommendation from

12

1 me, but if you make a recommendation, I will consider it.
2 What do you recommend in terms of a daily fine?
3      MR. NICHOLSON: From this point forward or for
4 the subsequent?
5      THE COURT: Let's just put it all together.
6      MR. NICHOLSON: You know --
7      THE COURT: $10,000 a day?
8      MR. NICHOLSON: That was the number that was in
9 my mind.
10     THE COURT: It's a start.
11     MR. NICHOLSON: But I have not actually had that
12 situation before, so I really don't have an example to draw
13 from. But $10,000 a day was the number that was in my
14 mind.
15     THE COURT: I think it's a start. Put that
16 number in. It certainly won't be any less than that, and I
17 may decide to go up.
18     Do we have any indication of how much money has
19 been collected by Mr. Vanmoor?
20     MR. NICHOLSON: I am not privy to that
21 information. It was obtained via grand jury subpoena or
22 perhaps some of the information in the search warrant, but
23 I have not been made aware of that number as of yet.
24     THE COURT: Anything else that we need to
25 address?

13

1      MR. FLEISCHMAN: Actually, Judge, in other words,
2 the $10,000 is the per day from December 22nd?
3      THE COURT: That's correct.
4      MR. FLEISCHMAN: I did have one other question.
5      I spoke to Mr. Nicholson yesterday. We have the
6 hearing coming up on Friday which as of right now is still
7 on.
8      THE COURT: Are you seriously going to contest
9 this?
10     MR. FLEISCHMAN: Judge, I mean --
11     THE COURT: That's your right.
12     MR. FLEISCHMAN: We have had a meeting and we
13 have talked. I got here a little early today, and I'm
14 trying to see what I can do about that.
15     THE COURT: Okay.
16     MR. FLEISCHMAN: I had filed a motion yesterday.
17 I wanted to be able to depose Agent Ward, who is in court
18 today.
19     THE COURT: Ordinarily, I would grant such a
20 motion. But when you have somebody in flagrant and
21 egregious contempt, as Mr. Vanmoor is, why should he get
22 any consideration whatsoever?
23     MR. FLEISCHMAN: Judge, I understand that's your
24 position, but I have all these materials from the agents
25 and I wanted to be able, if I am really in a position that

14

1 I have to go forward on Friday, I wanted to be able to do
2 some expedited discovery, to take a depo just limited
3 solely to the issues that were raised in her affidavit.
4     MR. NICHOLSON: Your Honor, if I may, there is
5 actually an additional legal basis for the Court to deny
6 the motion.
7     18 USC 1345, which is the injunctions against
8 fraud statute that we are proceeding under, in subsection B
9 provides, about halfway down the paragraph -- I will let
10 the Court catch up with us here.
11    THE COURT: 1345.
12    MR. NICHOLSON: Subsection B. It is the last
13 section in the section. Halfway down in the paragraph, it
14 starts: A proceeding under this section is governed by.
15    THE COURT: What subsection?
16    MR. NICHOLSON: Subsection B. A proceeding under
17 this section is governed by the Federal Rules of Civil
18 Procedure except that if an indictment has been returned
19 against the respondent, discovery is governed by the
20 Federal Rules of Criminal Procedure.
21    Given the handing down of the indictment, we have
22 now moved to the Federal Rules of Criminal Procedure which
23 would not permit the deposition.
24    THE COURT: That would be an additional basis
25 then for denying discovery.

15

1    Now, if they want to talk to you informally,
2 that's up to them. I can't direct it. I'm not directing
3 them. That is something that you might want to explore.
4    Is there anything further?
5    MR. FLEISCHMAN: Just if we are able to reach an
6 agreement or put off the hearing on Friday, I am assuming
7 we can just fax something to your office.
8    THE COURT: You can. The exhibits are all
9 admitted.
10    Anything further?
11    MR. FLEISCHMAN: No, Your Honor. Thank you.
12    MR. NICHOLSON: That's all.
13    THE COURT: Thank you.
14    [Proceeding adjourned at 2:20 p.m.].
15        CERTIFICATE
16    I hereby certify that the foregoing is an accurate
17 transcription of proceedings in the above-entitled matter.
18
19 _____
        DATE        LARRY HERR, RPR-CM-FCRR-AE
20             Official Federal Court Reporter
                301 North Miami Avenue, Room 340
21             Miami, FL  33128 - 305/523-5598
22
23
24
25

**A**

able 6:6,19 8:12 13:17,25 14:1 15:5
above-entitled 15:17
absolutely 6:5
access 6:19
accurate 15:16
acids 8:16
Act 10:23
addition 11:13
additional 14:5,24
address 12:25
adjourned 15:14
Administration 2:8
admitted 15:9
advised 5:10
advisements 9:9
Affairs 10:14
affidavit 14:3
afternoon 2:5 9:18
agent 2:7 3:1,8,22 4:3,7 13:17
agents 13:24
agreement 15:6
al 1:8 2:2
America 1:5 2:1
amino 8:16
answer 8:25
answered 4:16
appearances 1:13 2:3
appears 6:19 7:1
argument 4:25 5:2,5
Assistant 1:15
assuming 15:6
attempts 4:16
Attorney 1:15
AUSA 10:4,6
authority 11:8
Avenue 1:21 15:20
aware 12:23

**B**

B 14:8,12,16
based 10:10
basis 14:5,24
behalf 2:6
believe 11:6
believer 8:23
believes 6:7
beyond 8:5 9:1
Blvd 1:15,18
briefly 2:18
Broward 1:15,18
brunt 9:6

**C**

C 15:15,15
call 4:16
called 5:13
calls 4:8,10
cancer 3:17 7:1 8:15,16
Cancer-Cure 3:5,5,9,9,13,13,16,18,19 3:24,24,25 6:25
can't 5:1 6:5 8:5 15:2
carried 9:8
carry 9:3
Case 1:3 2:2
catch 14:10
cause 2:12
certainly 6:1,13 7:2,20 12:16
certify 15:16
changed 5:24
changes 5:23
changing 7:13 8:14
chasing 10:18,18
check 5:12,13
citizen 7:24
Civil 14:17
CLERK 2:1
client 5:11
collected 12:19
com 3:6,15,19,25 4:1
come 5:3
coming 7:25 13:6
comment 5:4
companies 10:16 11:15,18
company 5:10 10:12
compel 1:11 2:10 11:8,8
compelling 11:10
compliance 1:11 2:10 7:7,9,10,11 8:8 8:21
complied 7:12
complying 11:1
confirmed 10:13
consider 12:1
consideration 13:22
consultants 7:6
contains 3:21
contempt 2:13 8:22 9:14,19 10:2 11:7 13:21

contemptible 6:4
contest 13:8
Control 3:17
controls 8:16
convicted 8:3
copies 4:18
CORP 1:8
correct 2:20 13:3
counsel 2:3,7
court 1:1,20 2:9,16,19,22,24 3:2 4:20 4:23 5:1,6,10,17,20 6:2,10,22,24 7:9 8:1,10,13,25 9:5,9,13,15,19,21,24 10:5,7,15,20,24 11:22 12:5,7,10,15 12:24 13:3,8,11,15,17,19 14:5,10,11 14:15,24 15:8,13,20
Court's 4:12 6:13
created 4:7
criminal 7:19,21 9:14,19 10:2 14:20 14:22
cure 3:6,6,19 4:1
curing 8:15

**D**

daily 11:25 12:2
date 3:10 15:19
dates 4:15
day 12:7,13 13:2
days 8:25 11:12
deadline 3:2
December 13:2
decide 12:17
defendant 2:12
Defendants 1:9,17
deny 14:5
denying 14:25
depo 14:2
depose 13:17
deposition 14:23
DEPUTY 2:1
desperate 8:17
didn't 5:12
different 10:18,19
difficulty 11:3
direct 15:2
directing 15:2
directive 4:13
disconnect 11:16
discovery 14:2,19,25
dispute 6:3
DISTRICT 1:1,1
DIVISION 1:2
doesn't 5:17 6:24
doing 6:18
domestic 10:16
don't 4:24 5:3,6,21 6:2 7:10 8:20 9:3,5 9:21,23,25 11:16 12:12
dot 3:4,5,5,5,6,6,6,8,9,9,13,13,14,14 3:15,17,17,18,18,19,19,23,24,24,24 3:25,25,25,25 4:1
doubt 9:24
draft 11:6
draw 12:12
Drug 2:8

**E**

E 15:15,15
early 13:13
easily 10:20
East 1:15,18
easy 10:22
effective 10:15
effort 7:4 8:9
egregious 6:4 13:21
emergency 2:10
entered 5:22
entering 10:24
ESQ 1:14,17
et 1:8 2:2
events 11:11
evidentiary 4:22,25
exact 4:4
example 12:12
exceedingly 8:23,24
exhibit 2:23,25 3:3,4,7,11,21 4:2,6
exhibits 2:19,25 15:8
expedited 14:2
expert 6:1
experts 7:5
explaining 5:19
explore 10:23 15:3
exploring 10:13,19
extraditable 9:22
extradition 10:1
e-mailed 11:6

**F**

F 15:15
fact 5:20

failed 7:16 8:19
fairly 10:22
faith 8:9
far 8:8 9:25 11:7
fax 15:7
FDA 4:7 7:6
Federal 1:20 14:17,20,22 15:20
Fighter 1:8 2:2
filed 13:16
find 5:25 6:3,3 10:17
findings 11:12
fine 8:24 11:25 12:2
firm 8:22
first 4:14 7:9
FL 1:16,18,21 15:21
flagrant 13:20
Fleischman 1:17 2:18,20,21 4:19,23 4:24 5:4,9,18 6:9,11,23 7:1 8:7,11 9:1,2,8,14 11:20 13:1,4,10,12,16,23 15:5,11
FLORIDA 1:1,5
Flu 1:8 2:1 3:5
Flu-related 6:20
following 2:24 3:12,23 4:4,8
Food 2:7
foregoing 15:16
Fort 1:2,16,18
forward 12:3 14:1
four 4:8,11
frankly 10:17
fraud 14:8
Friday 5:10,22 13:6 14:1 15:6
full 6:15
further 2:11,12 4:21 15:4,10

**G**

getting 7:7
Given 14:21
go 8:20 12:17 14:1
goes 8:3
going 6:6 7:20,23 8:1,21,21 11:25 13:8
good 2:5 8:9
gotten 9:10
governed 14:14,17,19
Government 1:14 3:4,7,21 4:2,6,21
Government's 2:25
grand 12:21
grant 13:19
grind 8:23
guess 6:7

**H**

halfway 14:9,13
handed 9:17
handing 14:21
handled 10:3
handling 10:5
happens 7:23
harbor 7:23
haven't 9:10
hawking 8:17
hearing 1:11 13:6 15:6
held 2:12
HERR 1:20 15:19
he'll 8:25
he's 6:6 7:17 8:4
Honor 2:5,15,23 4:6,22 9:20 14:4 15:11
HONORABLE 1:11
hope 8:2

**I**

imagine 5:1 6:5
impugnity 6:6 7:2
impunity 7:19
include 11:11
includes 3:4
including 11:12
indication 12:18
indicted 9:13
indictment 9:11,15,16 14:18,21
Info 3:17
informally 15:1
information 10:11 12:21,22
injunctions 14:7
intention 11:1
International 10:14
Internet 6:18
investigation 7:19,21
issuance 2:11
issue 7:11,11
issues 14:3
it's 2:17 6:7 7:9 10:11 11:25 12:10,15
I'm 5:19,21 6:18 7:5,20 8:22 9:5,24 13:13 15:2

**J**

jail 8:3,4
January 1:6 3:1,8,11,22 4:3,5,8,9
Judge 1:12 2:21 4:24 5:9,18 8:7 9:2 11:20 13:1,10,23
Jupiter 11:23
jury 12:21
justice 8:23

**K**

Kim 2:7 3:13
kind 5:1
KLEIN 1:11
know 5:6,14,18,21 7:3,22 8:20 9:3,21 9:23,25 10:9 11:16 12:6
knowing 6:15

**L**

language 5:24 7:13 8:15
LARRY 1:20 15:19
lastly 4:6
late 7:9
latest 11:11
Lauderdale 1:2,16,18
lawyer 9:7
lectern 5:3
left 5:10
legal 14:5
Let's 12:5
lieu 2:19
limited 14:2
lines 5:12,14,14
links 3:15
list 2:24
little 13:13
live 2:20
locate 10:8,20
log 4:7,14
longer 4:17
Luxembourg 10:12

**M**

MAGISTRATE 1:12
market 8:12
Martin 3:14,24
materials 13:24
matter 5:17,20 15:17
mean 7:3 8:7 9:3 13:10
meeting 13:12
mention 6:14
mentioned 6:16
Miami 1:5,21,21 15:20,21
Migraine 3:6
Migraine-related 6:20
mind 12:9,14
money 6:24 12:18
moons 11:23
motion 1:11 2:10 11:7 13:16,20 14:6
moved 14:22
M-a-r-t-i-n 3:15

**N**

N 1:14
national 7:24
nature 11:20
necessarily 5:12
necessary 11:1
need 10:1 12:24
Netherlands 6:8 7:18,22,24
Nicholson 1:14 2:5,6,14,15,17,23 4:22 5:21 6:12 9:15,17,20,23 10:3,6,10 10:22 12:3,6,8,11,20 13:5 14:4,12 14:16 15:12
nine 11:23
North 1:21 15:20
notice 5:20 6:2,3
noticed 5:22
number 4:17 12:8,13,16,23
numbers 4:8,12,14 5:7 10:16,18,21 11:3,19

**O**

obtained 12:21
obviously 5:9 7:3 10:25
occurred 11:12
office 10:4,13 15:7
Official 1:20 15:20
Okay 13:15
ones 4:5 6:19 7:1
opening 7:21
operate 7:18
operated 10:12
operating 3:10
operational 3:12,23 4:4,15,17
option 7:15 8:13,14,14 10:19
options 7:14
order 2:11,11 5:22 6:15,16 7:12 8:21

9:10 10:14 11:10,14,18,21
orders 5:15,15 9:4,8 10:24
Ordinarily 13:19
org 3:6,25
outrageous 6:5 8:17
overcome 8:18
o'clock 3:2

**P**

paragraph 14:9,13
part 6:21
people 8:11,17
permit 14:23
person 4:16
personally 5:13
phone 5:7,12,14,14 10:16,16,18 11:3 11:18,19
phones 11:16,17
Plaintiff 1:6
plaintiff's 2:9
planet 11:22
please 2:3 11:6
point 10:13 12:3
position 6:12,13 13:24,25
possible 5:1
possibly 7:10
presume 7:19
price 8:17
printed 3:12,22 4:3
printout 3:4
printouts 2:25 3:7,11,22 4:2
privy 12:20
Procedure 14:18,20,22
proceed 2:14
proceeding 7:20 14:8,14,16 15:14
proceedings 15:17
process 7:6
product 5:16 6:17,21 7:8 8:12
proffer 2:19,24
proper 8:11
provided 2:23 4:18
providers 10:21
provides 9:25 14:9
provision 11:13
punishment 9:11
put 12:5,15 15:6
putting 2:20
p.m 3:2 4:9 5:12 15:14

**Q**

question 13:4
quickly 10:18
quite 10:17,17

**R**

R 15:15
raised 14:3
reach 15:5
ready 2:14
really 12:12 13:25
recast 11:9
recommend 7:21 8:22 12:2
recommendation 11:10,24,25 12:1
recommendations 10:25
record 2:4 3:3
redirects 3:17,19
refused 7:16
regards 9:11
remarkable 5:25
remedies 8:5
Report 11:10
REPORTED 1:20
Reporter 1:20 15:20
required 8:4 9:9
requires 11:14,15
respond 6:9
respondent 14:19
restraining 2:11
returned 14:18
right 2:16,22 4:20 6:10 13:6,11
Robert 1:14 2:6
Robin 10:6
Room 1:21 15:20
Rosenbaum 10:6
RPR-CM-FCRR-AE 1:20 15:19
Rules 14:17,20,22
running 7:4
R&R 11:6,7

**S**

S 1:15
search 12:22
second 2:9 7:11
section 14:13,13,14,17
see 7:10 13:14
sell 8:12
seriously 13:8

server 10:8,9 11:14
servers 10:19
service 11:18
set 3:2
shipped 5:16,16
show 2:12
shows 4:14 6:1
shut 5:8,24 6:17,22,23 7:12,15 8:14,19 10:8,25 11:2,14,19
shutting 10:15
sick 8:4
SIDNEY 1:17
simply 8:18
site 3:7,11,16,18,20,21 4:2 7:3,7 10:11 11:2
sites 3:1,12,23 4:4 5:7,11,23 6:14,16 6:20,20,25 7:13 10:8 11:15,17,21
situation 12:12
slow 8:23
solely 14:3
somebody 13:20
sorry 9:5
SOUTHERN 1:1
Special 2:7
specific 11:13
spelled 3:14
spoke 13:5
stand 9:2
start 12:10,15
started 7:4,17
starts 14:14
state 2:3
States 1:1,5,12 2:1,6 11:21
statute 14:8
steps 11:2
subject 3:1 4:12
subpoena 12:21
subsection 14:8,12,15,16
subsequent 12:4
sufficient 8:18
Suite 1:15,18
suppose 5:4
supposed 6:17
sure 5:21 9:25

**T**

T 15:15,15
table 2:7
tail 10:18
take 8:4 9:6 11:2 14:2
taken 5:15
talk 15:1
talked 2:18 13:13
telephone 4:7,7,8,12 10:21 11:15
tell 5:7 9:1
temporary 2:10
tend 9:24
terms 11:9,24 12:2
testimony 2:20
Thank 15:11,13
that's 5:16 8:8,13,13 9:15,21 10:3 13:3 13:11,23 15:2,12
THEODORE 1:11
there's 5:15,15,16 7:6
they're 7:23
think 6:2 7:25 10:16 11:3,17 12:15
thinks 6:5 7:18,23
three 4:14
today 9:11 13:13,18
today's 11:12
told 6:11
total 6:6
TRANSCRIPT 1:11
transcription 15:17
treaty 7:22 9:25
trying 8:9 13:14
Tumor 3:18 4:1
two 11:12

**U**

U 1:15
ultimately 8:3,22
uncomfortable 6:8
understand 5:19 6:11,12,13 8:7 11:2 13:23
understanding 2:17 10:10
United 1:1,5,12 2:1,6 11:21
USC 14:7
use 7:2
useless 8:16
Usually 10:1
U.S 3:5,5,9,9,13,14,18,20,24,24

**V**

v 1:7
Vanmoor 5:23 7:5,16 8:24 12:19 13:21
viewed 11:21

vs 2:1

**W**

want 10:7 11:1,11,13 15:1,3
wanted 13:17,25 14:1
Ward 2:7 3:1,8,13,22 4:3 5:21 13:17
warrant 12:22
way 8:1 10:8,20
Web 2:25 3:1,7,11,12,16,18,20,21,23 4:2,4 5:7,11,23 6:14,16 7:3,7,13 10:8,11,19 11:2,14,17,21
week 7:5 9:10
weekend 5:13
Weinstock 3:14,25
went 6:18
whatsoever 13:22
what's 8:8 11:1,24
wheels 8:23
willing 2:18 11:19
won't 12:16
word 7:2
words 13:1
Writs 10:23
wrong 6:18
WWW 3:4,5,6,8,13,14,17,18,23,24,25 3:25
W-e-i-n-s-t-o-c-k 3:15

**X**

x 1:9

**Y**

yesterday 13:5,16

**Z**

Z 1:17

**$**

$10,000 12:7,13 13:2

**0**

05-61940-Civil-Lenard 2:2
05-61940-CIVIL-LENARD/KLEIN 1:3
06 3:1,8,12,22 4:3,9

**1**

10 1:6
10th 4:3
1345 14:7,11
16 2:25 3:4
17 3:3,7
18 3:11 14:7
19 3:21

**2**

2:20 15:14
20 4:2
2006 1:6
21 4:7
22nd 13:2

**3**

300 1:18
301 1:21 15:20
305/523-5598 1:21 15:21
33128 1:21 15:21
33301 1:16,18
340 1:21 15:20

**5**

5:00 3:2 4:9 5:12
500 1:15
561-392-5363 4:11
561-393-8877 4:10

**6**

6 3:1
6th 4:9

**7**

7th 3:8
700 1:15

**8**

8th 3:12 4:9
800 1:18
800-344-5044 4:10
800-709-9096 4:11,17

**9**

9th 3:22 4:5
954/523-7223 1:19
954/660-5707 1:16